**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| HINO MOTORS MANUFACTURING U.S.A, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>CHRIS HETMAN, TODD SHEPLEY, BRUCE SCHROEDER, JOHNATHAN BOYER, and BOYER CONSULTING, LLC, )<br><br>Defendants. ) | Case No.: 2:20-CV-10031 |

**VERIFIED COMPLAINT**

Plaintiff, Hino Motors Manufacturing U.S.A., Inc. ("Hino" or "Plaintiff"), by counsel, states as follows for its Verified Complaint against Defendants Chris Hetman ("Hetman"), Todd Shepley ("Shepley"), Bruce Schroeder ("Schroeder"), Johnathan Boyer ("Boyer") (collectively, the "Individual Defendants"), and Boyer Consulting, LLC ("Boyer Consulting"):

**PRELIMINARY STATEMENT**

1.      Defendant Hetman, while employed as Hino's Purchasing Manager, conspired with the other Defendants to create an unlawful enterprise to fraudulently funnel and award bids to certain suppliers of Hino and divert funds related to those bid awards to themselves and their unlawful enterprise for personal gain.  Hino is asserting causes of action against Defendant Hetman for breach of fiduciary duty, breach of contract and violation of the federal Computer Fraud and Abuse Act, and claims against all Defendants for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), for aiding and abetting breach of fiduciary duty, for

breach of contract, for tortious interference with a business relationship, for fraud, for unjust enrichment, and for statutory conversion under Michigan law.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Hino is a Delaware corporation with a principal place of business in Novi, Michigan.

3.      Defendant Chris Hetman is a resident and citizen of Wayne County, Michigan.

4.      Defendant Jonathan Boyer is a resident and citizen of Macomb County, Michigan.

5.      Defendant Todd Shepley is resident and citizen of Ontario, Canada.

6.      Defendant Bruce Schroeder if a resident and citizen of Putnam County, Ohio.

7.      Defendant Boyer Consulting is a Michigan limited liability company with a principal place of business in Saint Clair Shores, Michigan.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 18 U.S.C. § 1964 related to its causes of action under RICO, 18 U.S.C. §§ 1961 to 1968, and 18 U.S.C. § 1030 related to its causes of action under the Computer Fraud and Abuse Act.  This Court has subject matter jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because the claims are so related to the claims where original federal jurisdiction exists.

9.      Venue is proper in this Court under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because all Defendants are subject to personal jurisdiction in this district, Defendants Hetman and Boyer reside in this district, because all Defendants transacted affairs related to the subject matter of the causes of action in this Verified Complaint in this district, and because a substantial part of the events giving rise to the claims asserted occurred within this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Hino's Business and Hetman's Role In It

10.     Hino is primarily in the business of producing medium and heavy duty trucks and truck components.  While headquartered in Novi, Michigan, Hino has manufacturing facilities in multiple states, including West Virginia and Arkansas, and its products are distributed throughout the entire United States.  Additionally, Hino's supply chain spans multiple states.  Hino's business operations, therefore, substantially affect interstate commerce.

11.     As a truck manufacturer, Hino relies upon parts and materials sources from an expansive chain of suppliers.

12.     To procure parts and materials from suppliers, Hino has established a purchasing organization.  One department in its purchasing organization is the Purchasing Department, and one section of the Purchasing Department is responsible for Hino's North American Project ("NAP"), which manufactures and assembles Class 6 through 8 commercial trucks.

13.     On January 30, 2006, Defendant Chris Hetman began his employment with Hino as a purchasing agent.  Hetman's job duties generally were to secure materials and parts from suppliers.  Hetman was to have direct communications with these suppliers and obtain the materials and parts at the most competitive price from the competing suppliers.  In selecting suppliers, Hetman also was responsible for leading supplier contract negotiations and helping to assess whether the suppliers were capable of performing under the contract to Hino's specifications.

14.     In 2016, Hetman became the Purchasing Manager related to Hino's NAP business. As such, Hetman was responsible for procurement for all parts and materials related to NAP.

### The Procurement Process

15. The market to supply parts and materials to Hino is very competitive. Hino employees in the Purchasing Department often receive numerous emails per day related to submitting bids by suppliers and are otherwise in constant contact with companies who are interested in working with Hino.

16. To become a prospective supplier for Hino, Hino and the prospective supplier will execute a non-disclosure agreement ("NDA") to protect each party's confidential information. Because the supplier market is competitive, these NDAs are one part of the critical process of ensuring confidentiality and fairness in the procurement process. For example, if a supplier were to obtain information about a competitor's bid, that supplier would obtain a competitive advantage in obtaining a contract with Hino, and the disclosure of the confidential information would undermine the integrity of the procurement process for all involved.

17. Accordingly, only suppliers who have signed NDAs are permitted to receive requests for quotation ("RFQs"), which are invitations to suppliers and prospective suppliers to submit bids to supply Hino parts or materials. In other words, to even be considered for a contract with Hino, Hino takes significant steps to vet suppliers and maintain confidentiality.

18. When Hino submits RFQs to selected suppliers and prospective suppliers, by necessity it shares certain information to enable the suppliers to bid on the work. Such information, which Hino considers to be confidential, includes, among other things, ongoing or proposed business strategy and plans, engineering specifications for the tools, dies, parts or material, technical standards that Hino requires, annual volume data, and program due date.

19. While some of this information is necessarily shared with suppliers, Hino does not share its target price—that is, the price Hino hopes to pay for the material or parts—or other pricing

- 4 -

data with suppliers. Sharing this information with suppliers likely increases the cost for Hino to do business, but, more importantly, undermines Hino's ability to negotiate and achieve competitive pricing with its suppliers and compromises the integrity of the procurement process.

20. Hino also does not share confidential information from competitor suppliers with other suppliers. Sharing this information with suppliers likely increases the cost for Hino to do business, but, more importantly, undermines Hino's ability to negotiate and achieve competitive pricing with its suppliers and compromises the integrity of the procurement process. .

### **Hino Required Hetman to Protect Its Confidential Information**

21. In his roles at Hino, ultimately culminating in him becoming a Purchasing Manager regarding the NAP business in 2016, Hetman was granted substantial access to Hino confidential business information, including but not limited to (1) Hino's costs, which determine how much it can pay a supplier for a particular need; (2) target prices for suppliers to meet; (3) cost study information; (4) the terms of bids of suppliers for particular needs; and (5) Hino's strategic plans; among other things.

22. On or about July 17, 2015, Hetman signed an Employee Confidentiality Agreement with Hino. A true and accurate copy of the agreement is attached as **Exhibit 1** and is incorporated in this Complaint as if set forth fully herein.

23. In the Employee Confidentiality Agreement, confidential information is defined to include, among other things: "the contents of files, correspondence and information to [Hino's] dealers or potential dealers; all non-public technical and product information; and all writings, drawings, specifications, machine-readable data, source codes and object codes." Ex. 1.

24. In the Employee Confidentiality Agreement, Hetman also agreed and acknowledged that he had access to Hino's confidential information and that disclosing

confidential information in violation of the agreement was grounds for immediate termination, would result in immediate and irreparable injury to Hino, and that Hino would be entitled to injunctive relief to remedy Hetman's breaches of the agreement.  Ex. 1.

25.    The Employee Confidentiality Agreement further provides that Hetman "agrees that [Hino] has not consented to the retention or copying of any such secret or confidential information or materials and that to retain or make copies of any such information or materials is a breach of [Hetman's] obligations to [Hino]."  Ex. 1.

26.    Hetman also acknowledged receipt of Hino's Team Member Handbook ("Handbook").  The Handbook provides that Hino property, including computers and cell phones provided to its employees, are "provided for use to facilitate Company business."  Further, "Under no circumstances are Team Members allowed to use [Hino] assets in a way that could violate [Hino] policies."

27.    The Handbook also sets forth a confidentiality policy, which requires Team Members, including Hetman, who have access to confidential information to "protect it from unauthorized disclosure or use" and "must hold [it] in trust and confidence, and not use or disclose it or any embodiment thereof, directly or indirectly, except as may be necessary in the performance of duties for [Hino] to as otherwise required by law."

## The Boyer Enterprise

28.    Hetman progressed at Hino, and in 2016, he also was promoted to Purchasing Manager for Hino's NAPs business.

29.    Hetman's progression at Hino, however, apparently was not enough to satisfy him. Instead, Hino believes that Hetman and the other Defendants engaged in an enterprise to secretly

and unlawfully siphon money from Hino related to the contracting process for their own personal gain.

30.     Over the course of several years—beginning, Hino believes, potentially as early as 2010—Hetman engaged in an unlawful conspiracy with the other Defendants (the "Boyer Enterprise") with the common purpose of funneling and awarding bids to certain small to mid-size suppliers in order to obtain a commission on that work without the knowledge or approval of Hino.

31.     Each member of the Boyer Enterprise—all Defendants—played a role in directing and participating in the Enterprise.

32.     Boyer Consulting holds itself out as a sales representative for suppliers in the automotive and heavy truck industries.

33.     Defendant Boyer is the President of Boyer Consulting and as such, directed and had knowledge of all of Boyer Consulting's actions in furtherance of the Boyer Enterprise.

34.     Boyer Consulting's website, theboyerllc.com, provides almost no information about the company other than stating that it is a "Manufacturing Representation Agency, also known as an independent Sales Rep firm or independent Sales Agent," and that it has "a highly experienced sales team with Reps in Michigan, Ohio and Ontario Canada."

35.     The "experienced sales team" includes Defendants Shepley, who resides in Ontario, Schroeder, who resides in Ohio, and Boyer, who resides in Michigan.

36.     The only contact information provided on Boyer Consulting's website is a telephone number.  That telephone number is associated with Defendant Shepley.

37.     Shepley is Boyer Consulting's Vice President / Director of Canadian Sales. Shepley also works for Cavalier Tool and Manufacturing Ltd., which is headquartered in Windsor, Ontario, as a Sales Account Manager.  Shepley engaged in a consistent pattern of communications

with Hetman to further the Boyer Enterprise, including but not limited to receiving confidential information from Hetman regarding Hino and its suppliers.

38.     Defendant Schroeder is Boyer Consulting's Director of Sales.  Schroeder engaged in a consistent pattern of communications with Hetman to further the Boyer Enterprise, including but not limited to receiving confidential information from Hetman regarding Hino and its suppliers.

39.     Defendant Boyer is Boyer Consulting's President.  Boyer engaged in a consistent pattern of communications with Hetman to further the Boyer Enterprise, including but not limited to receiving confidential information from Hetman regarding Hino and its suppliers.

### The Boyer Enterprise Engaged in a Pattern of Racketeering Activity and Fraud

40.     With Hetman's inside assistance, Boyer Consulting offered to solicit requests for proposal from Hino, market the supplier to Hino, and sell products on behalf of the supplier to Hino.  Upon information and belief, Boyer Consulting targets small to mid-size suppliers for its scheme in order to avoid detection by Hino or others.

41.     As an example of how the Boyer Enterprise worked, Boyer Consulting would enter into Sales Representative Agreements with suppliers to solicit orders from Hino to purchase the supplier's products.  An example of such a Sales Representative Agreement is attached as **Exhibit 2**.

42.     As stated in Section 2 of the Sales Representative Agreement, Boyer Consulting agreed to represent the supplier with regard only to certain customers identified in Appendix A to the agreement.  As shown in Appendix A, the sole customer is "Hino."

43.     Boyer Consulting was paid under the Sales Representative Agreement directly from the supplier through commissions that are based upon the amount the supplier invoices to Hino. *See* Ex. 2 at §§ 16-20.

44.     Boyer Consulting has never entered any contract with Hino (including any NDA) and, aside from communications with Hetman, has never communicated directly with Hino. Rather, Boyer Consulting "solicited" orders from Hino through its communications with Hetman.

45.     These solicitations occurred not through any authorized or legitimate business activity but through Hetman unlawfully disclosing Hino's confidential information to Boyer Consulting and its representatives, including the other Defendants.

46.     The confidential information Hetman shared with Defendants without authorization from Hino include, among other things, target pricing that Hino sought for bids; competing suppliers' bid information, including pricing of the bids; Hino's business strategy and plans; and information regarding Hino's focus and interests related to bids.

47.     In furtherance of the Boyer Enterprise, Hetman shared this information with Defendants by, among other things, sending and receiving emails using his Hino email account on his Hino-owned and –provided and laptop computer.

48.     Specifically, and by way of example, in furtherance of the Boyer Enterprise, on July 17, 2018, Hetman, using his Hino email account, forwarded to Shepley an email from another Hino employee which attached a spreadsheet identifying confidential pricing information for several parts. A true and correct copy of this email is attached as **Exhibit 3** and is incorporated in this Complaint as if set forth fully herein.  In forwarding the email to Shepley, Hetman advised to let the supplier know what Hino's focus was for the bid process for the parts.

49.     On August 24, 2018, Hetman, using his Hino email account, emailed Shepley a confidential spreadsheet containing information pertaining to over 100 casting parts, including the current Hino price for the parts, the annual volume for the parts, and the RFQ volume for the parts. A true and correct copy of this email is attached as **Exhibit 4** and is incorporated in this Complaint as if set forth fully herein. The spreadsheet also included the pricing information for various suppliers and the target price for suppliers.  Hetman emailed Shepley to see if the supplier he represented could meet the target prices for the parts.    By sending this email, Hetman sought to ensure that his co-conspirators were aware of each other's activities and that the competing bidders were all represented by Boyer Consulting.

50.     On September 14, 2018, Hetman, using his Hino email account, forwarded to Schroeder and Shepley a copy of an original equipment manufacturer ("OEM") supplier research spreadsheet containing confidential pricing information pertaining to more than 90 parts.  A true and correct copy of this email is attached as **Exhibit 5** and is incorporated in this Complaint as if set forth fully herein. In sending this email, Hetman explicitly asked for assistance from Schroeder and Shepley to locate suppliers: "The other opportunity is attached, showing all major component not localized yet.  Need to bring all this over also, so please point me in the right direction, who can supply all this in USA."

51.     On November 26, 2018, Hetman, using his Hino email account, forwarded to Schroeder multiple invoices from a Hino supplier.  A true and correct copy of this email is attached as **Exhibit 6** and is incorporated in this Complaint as if set forth fully herein.

52.     On January 23, 2019, Hetman, using his Hino email account, forwarded to Schroeder and Shepley Hino's confidential targeted spend amounts—that is, the amounts Hino

targeted to spend on specific parts and materials—for 2019. A true and correct copy of this email is attached as **Exhibit 7** and is incorporated in this Complaint as if set forth fully herein.

53.     On February 20, 2019, Hetman, using his Hino email account, forwarded to Shepley and Schroeder a confidential internal Hino discussion regarding a pedal bracket localization cost study and localization priority list as well as the confidential spreadsheets discussed. A true and correct copy of this email is attached as **Exhibit 8** and is incorporated in this Complaint as if set forth fully herein.

54.     In each of the emails identified in paragraphs 48 through 53, the information was confidential to Hino and/or its suppliers and there was no legitimate business reason for Hetman to share the information with Shepley or Schroeder. Rather, Hetman shared this information to further the Boyer Enterprise's common purpose of funneling and awards bids to a select group of suppliers while enriching themselves at Hino's and its suppliers' expense.

55.     In addition to providing the other Defendants with confidential Hino information to facilitate bidding for Hino work, Hetman has lied to his colleagues at Hino regarding his communications regarding the unlawful enterprise.

56.     For example, on September 5, 2018, Hetman, using his Hino email account, copied Schroeder on an internal Hino email regarding a supplier. Schroeder's email address is bs1@bright.net. A Hino employee copied on that email then asked Hetman who bs1@bright.net was. Hetman, in a reply email, lied to the Hino employee and identified Schroeder as the "sales guy" at the supplier. Schroeder, however, was not an employee of that supplier, but was acting as a member of the Boyer Enterprise to further that enterprise's common purpose. A true and correct copy of this email exchange is attached as **Exhibit 9** and is incorporated in this Complaint as if set forth fully herein.

57.     Because Hetman lacked any business justification for sending Hino's confidential information, and the confidential information of Hino's suppliers, to members of the Boyer Enterprise, and because sending this information harmed not only Hino but its suppliers, Hetman clearly was compensated for and personally profited by his actions by the Boyer Enterprise.

58.     Upon information and belief, the unlawful conduct identified above is only a fraction of the unlawful conduct perpetuated by the Defendants and other unlawful will be revealed through the course of discovery.

### Hino Discovers Hetman's Actions and Takes Corrective Action

59.     On or about August 30, 2019, Hino received a letter from an anonymous individual, identifying himself or herself as a "Concerned Supplier."  In the letter, the Concerned Supplier states, "Chris Hetman is engaged in unethical business relations with Cavalier Tool from Windsor, Ontario, Canada."  A true and correct copy of the letter is attached as **Exhibit 10** and is incorporated in this Complaint as if set forth fully herein.

60.     After receiving the letter, Hino discovered the emails identified above many of which Hetman had attempted to delete, and concluded that Hetman was engaged in a conspiracy with the other Defendants to defraud Hino.

61.     On December 12, 2019, Hino met with Defendant Hetman to discuss his involvement with Boyer, his violation of company policies, and unlawful conduct.  At that meeting Defendant Hetman remarkably denied any wrongdoing and to even having any knowledge of Boyer Consulting.  At that meeting Defendant Hetman was often nonsensical and fraudulently misrepresented his involvement in the Boyer Enterprise even when faced with clear evidence of his involvement.

62.     At the conclusion of the meeting on December 12, 2019, Hino suspended Hetman from employment with pay pending further investigation and retrieved his company-issued property, including his cell phone and laptop

63.     On December 20, 2019, Hino terminated Defendant Hetman's employment.

64.     Hino brings this action to enjoin further unlawful behavior by Defendants, to retrieve its stolen confidential information Defendants that remains in Defendants' possession, obtain sole custody and possession of same, and to obtain monetary damages for the harm that Defendants inflicted upon the company.

## COUNT I
### Violation of 18 U.S.C. § 1962(c) (RICO)
### (As to All Defendants)

65.     Hino re-alleges and incorporates the preceding allegations as if set forth herein.

66.     Defendants are "persons" as defined in 18 U.S.C. § 1961(3).

67.     Defendants agreed to and did conduct and participate in the conduct of the Boyer Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) for the unlawful purpose of intentionally defrauding Hino and its suppliers.

68.     The Boyer Enterprise is an association-in-fact under 18 U.S.C. § 1961(4) and consists of all Defendants.  The Boyer Enterprise is an ongoing organization that functions as a continuing unit.  The Boyer Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.  Each Defendant—Hetman, Boyer, Shepley, Schroeder, and Boyer Consulting—are distinct "persons" from the Boyer Enterprise.

69.     The Boyer Enterprise is an "enterprise" as defined in 18 U.S.C. § 1961(4).  It consists of a group of "persons" associated together for the common purpose of funneling and

awarding bids to certain small to mid-size suppliers in order to obtain a commission on that work (i.e. "kickback") without the knowledge or approval of Hino.

70.     Defendants have participated in and conducted the affairs of the Boyer Enterprise through a pattern of racketeering activity as defined under 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of wire fraud in violation of 18 U.S.C. § 1343 as described above.

71.     The Boyer Enterprise engaged in and affected interstate commerce because, among other things: (1) Defendants reside in different states and in different countries (Michigan, Ohio, and Ontario, Canada) and transacted business across state and national lines; (2) the suppliers engaged by the Boyer Enterprise transacted business in multiple states; and (3) the contracts sought by the Boyer Enterprise with Hino affected commerce nationally, as Hino distributes its products across the United States.

72.     Defendants exerted control over the Boyer Enterprise, and Defendants participated in the operation and management of the affairs of the Boyer Enterprise.

73.     The Boyer Enterprise used a common communication network, principally but not exclusively through email communications, by which Defendants, as co-conspirators, shared information on a regular basis.  The Boyer Enterprise used this common communication network to further its common purpose of funneling and awarding bids to certain small to mid-size suppliers in order to obtain a commission on that work without the knowledge or approval of Hino.

74.     Each Defendant, as a participant in the Boyer Enterprise, had a systematic link to each of the other participants through corporate ties, financial ties, communications (including wire communications), and continuing coordination of their activities.   Through the Boyer

Enterprise, Defendants functioned as a continuing unit with the purpose of furthering the enterprise's illegal scheme and its common purpose.

75.     Defendant Hetman had an independent duty—specifically, a fiduciary duty to his employer, Hino—not to disclose the company's confidential information to third parties without authorization.  Hetman breached his fiduciary duty, and committed wire fraud in violation of 18 U.S.C. § 1343, by not disclosing to Hino his unauthorized dissemination of Hino's confidential information to the other Defendants.  Hetman's failure to disclose his communications with the other Defendants in furtherance of the Boyer Enterprise was intended to defraud Hino.

76.      Defendants used the interstate wires for the transmission, delivery, and shipment of the following by Defendants and/or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

    a.   Contracts, wires, and mails between Boyer Consulting and Hino's suppliers and prospective suppliers;

    b.   Wires among Hetman, Shepley, and Schroeder, the latter two acted on behalf of Boyer and Boyer Consulting regarding unauthorized dissemination of Hino's and Hino's suppliers' confidential information;

    c.   Payments to Boyer Consulting from its contracted suppliers of Hino;

    d.   Payments to Hetman from Boyer Consulting and/or the other Defendants for his participation in funneling inside confidential information of Hino and its suppliers to the Boyer Enterprise; and

    e.   Use of wires by Hetman to conceal and construct false justifications for his funneling of confidential information of Hino and its suppliers to the Boyer Enterprise.

77.     Defendants used the interstate wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described herein.

78.     Defendants used the internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.

79.     Defendants communicated by interstate electronic mail with other third parties in furtherance of the Boyer Enterprise's scheme.

80.     The wire transmissions described herein were made to further Defendants' scheme and common course of conduct to deceive Hino regarding the Boyer Enterprise's role in Hino's purchasing process.

81.     Defendants' scheme and the above racketeering activities comprised a common course of conduct that was intended to cause Hino and others harm.  Each racketeering activity described in this Complaint was related, had a similar purpose, involved the same or similar participants and means of commission, and had similar results: defrauding Hino and its suppliers who were not part of the Boyer Enterprise's scheme.  Defendants' fraudulent acts are part of their ongoing business and constitute a continuing threat to Hino's property and business interests.

82.     Hino has been injured in its property and business as a direct and proximate result of Defendants' activities and violations.  Defendants interfered with Hino's current and prospective contractual relations and divulged Hino's and Hino's suppliers' confidential information.  As a result of this interference, Hino's relationship with its suppliers has been affected, its confidential information has been disclosed without authorization to third parties, and it has suffered monetary damages as a result of the Boyer Enterprise using Hino's confidential pricing information to disrupt its purchasing process.

83.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for treble monetary damages, Plaintiff's attorneys' fees and costs, and are subject to an injunction prohibiting their activities as described herein.

## COUNT II
### Violation of 18 U.S.C. § 1962(a) (RICO)
### (As to All Defendants)

84.     Hino re-alleges and incorporates the preceding allegations.

85.     In addition to the allegations asserted above, Defendants have used and/or invested income that was derived from their pattern of racketeering activity in an interstate enterprise—the Boyer Enterprise.  Specifically, and as described above, Boyer Consulting was paid commissions by its contracted suppliers for its work in obtaining contracts for those suppliers with Hino.  The Individual Defendants were paid money as a result of these commissions, and each Defendant used and/or invested money obtained from Boyer Consulting's commissions and other income.

86.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Hino has been injured in its business and property because Defendants interfered with Hino's current and prospective contractual relations and divulged Hino's and Hino's suppliers' confidential information.  As a result of this interference, Hino's relationship with its suppliers has been affected, its confidential information has been disclosed without authorization to third parties, and it has suffered monetary damages as a result of the Boyer Enterprise using Hino's confidential pricing information to disrupt its purchasing process.

87.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for treble monetary damages, Plaintiff's attorneys' fees and costs, and are subject to an injunction prohibiting their activities as described herein.

## COUNT III
### Violation of 18 U.S.C. § 1962(d) (RICO)
### (As to All Defendants)

88.     Hino re-alleges and incorporates the preceding allegations.

89.     In addition to the allegations asserted above, Defendants have agreed and conspired to violate 18 U.S.C. §§ 1962(a) and (c).  Specifically, and as set forth above in more detail, Hetman provided the other Defendants with unauthorized access to Hino's and its suppliers' confidential information for the purpose of funneling and awarding contracts to suppliers associated with Defendants.  In return, Defendants received money from the supplier who obtained the contract with Hino.  As such, Defendants used and/or invested income that was derived from a pattern of racketeering activity in the interstate enterprise identified herein as the Boyer Enterprise and have conducted and participated in the affairs of the Boyer Enterprise through a pattern of racketeering activity.

90.     Defendants have intentionally agreed and conspired to directly and indirectly use and/or invest income that was derived from a pattern of racketeering activity in an interstate enterprise and conduct and participate in the affairs of the enterprise through a pattern of racketeering activity.

91.     Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes of the Boyer Enterprise.

92.     Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

93.     As a direct and proximate result of Defendants' conspiracy, overt acts taken in furtherance of the conspiracy, and violations of 18 U.S.C. § 1962(d) , Hino has been injured in its business and property because Defendants interfered with Hino's current and prospective

contractual relations and divulged Hino's and Hino's suppliers' confidential information.  As a result of this interference, Hino's relationship with its suppliers has been affected, its confidential information has been disclosed without authorization to third parties, and it has suffered monetary damages as a result of the Boyer Enterprise using Hino's confidential pricing information to disrupt its purchasing process.

94.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for treble monetary damages, Plaintiff's attorneys' fees and costs, and are subject to an injunction prohibiting their activities as described herein.

**COUNT IV**
**Violation of 18 U.S.C. §§ 1030(a)(4) and 1030(g) (Computer Fraud and Abuse Act)**
**(As to Defendant Hetman)**

95.     Hino re-alleges and incorporates the preceding allegations.

96.     Hetman sent emails, some of which are identified above, to the other Defendants using the laptop and cell phone owned by Hino and provided to him for business use (collectively, the "Hino Computers").

97.     The Hino Computers are "protected computers" under 18 U.S.C. §§ 1030(e)(1) and (e)(2)(B) because they are used in a manner that affects interstate commerce, as Hetman's job duties included the interstate purchasing process for Hino's products that traveled in interstate commerce.

98.     While Hetman was authorized to access Hino's confidential information identified above to perform his job duties in the ordinary course of Hino's business, Hetman exceeded this authorization when he transmitted that confidential information to the other Defendants in furtherance of his scheme to defraud Hino.  This conduct exceeded Hetman's authorization because, among other things, it violated Hino's Team Member Handbook, which restricts the use

of Hino property and which prohibits the unauthorized disclosure of confidential information, and the Employee Confidentiality Agreement Hetman signed.

99.     By sending emails to the other Defendants as set forth above, Hetman knowingly and with the intent to defraud Hino, for whom he was employed and owed a fiduciary duty of loyalty, exceeded his authorized access to the Hino Computers.

100.     By sending emails to the other Defendants as set forth above, Hetman obtained monetary benefit that exceeded $5,000 in any one year period.  Specifically, Hetman received monetary proceeds from his involvement in the Boyer Enterprise, as a result of the commissions earned by Boyer Consulting pursuant to agreements with Hino suppliers.

101.     As a direct and proximate result of Hetman's conduct, Hino suffered losses, including but not limited to responding to Hetman's offenses under 10 U.S.C. § 1030(a)(4), recovering the confidential information disseminated without authorization to third parties, revenue losses, costs incurred as a result of disruption of the contracting process for suppliers, and other consequential damages in an amount to be determined at trial.

102.     As a direct and proximate result of Hetman's violations of 18 U.S.C. § 1030(a)(4), Hetman is liable to Plaintiff for compensatory damages in an amount to be determined at trial is subject to an injunction prohibiting his activities as described herein.

**COUNT V**
**Breach of Fiduciary Duty of Loyalty**
**(As to Defendant Hetman)**

103.     Hino re-alleges and incorporates the preceding allegations.

104.     As a Hino employee entrusted with confidential information, Hetman was in a confidential relationship with Hino and owed Hino a fiduciary duty of loyalty.

105.    Hetman had a clear duty not to use or disclose Hino's confidential information and has abused the confidential relationship with Hino through his use and disclosures.

106.    Hetman breached his fiduciary duty and duty of loyalty to Hino by misappropriating and misusing Hino's confidential information for the benefit of himself and the other Defendants.

107.    As a direct and proximate result of Hetman's breach of his fiduciary duty of loyalty, Hino has suffered and will continue to suffer severe and irreparable harm, including the loss of its business, supplier relationships, goodwill and competitive position, for which Hino has no adequate remedy at law.  The damages Hino will suffer in connection with the loss of business, supplier relationships, goodwill and competitive position are incapable of exact proof.

108.    Hetman will, unless restrained, continue to violate Hino's rights and will continue to breach his fiduciary duty of loyalty through continued possession of Hino's confidential information, causing Hino serious and irreparable injury.  Accordingly, Hino is entitled to a temporary restraining order, a temporary injunction, and a permanent injunction enjoining Hetman from continuing to breach his fiduciary duty of loyalty by continuing to divulge Hino's confidential information.

## COUNT VI
**Aiding and Abetting Breach of Fiduciary Duty of Loyalty**
**(As to Defendants Boyer Consulting, Boyer, Shepley, and Schroeder)**

109.    Hino re-alleges and incorporates the preceding allegations.

110.    Through the actions described above, Defendants Boyer Consulting, Boyer, Shepley, and Schroeder know Hetman owed a fiduciary duty of loyalty to Hino, but knowingly and intentionally induced, aided, and abetted Defendant Hetman to breach his fiduciary duty of loyalty owed to Hino.  Specifically, each of these Defendants engaged in a conspiracy and unlawful

- 21 -

enterprise to secretly and fraudulently funnel and award bids to certain suppliers of Hino and divert funds related to those bid awards to themselves and their unlawful enterprise for personal gain.

111.    As a direct and proximate result of Defendants Boyer Consulting, Boyer, Shepley, and Schroeder's malicious aiding and abetting of Defendant Hetman's breaches of his fiduciary duties, Hino has suffered and will continue to suffer irreparable harm and damages.

**COUNT VII**
**Breach of Contract**
**(As to Defendant Hetman)**

112.    Hino re-alleges and incorporates the preceding allegations.

113.    Hetman entered into a valid and enforceable Employee Confidentiality Agreement containing a covenant not to disclose Hino's confidential information to any person outside of Hino without authorization.

114.    Hetman violated the terms of the Employee Confidentiality Agreement by disclosing, without authorization, Hino's confidential information to the Other Defendants as described above.

115.    As a direct and proximate result of Defendant Hetman's breaches of the Employee Confidentiality Agreement, Hino has and/or will suffer irreparable harm and damages by way of, among other things, loss of goodwill, loss of confidential information, loss of suppliers and loss of profits.

**COUNT VIII**
**Tortious Interference with Contract**
**(As to Defendants Boyer Consulting, Boyer, Shepley, and Schroeder)**

116.    Hino re-alleges and incorporates the preceding allegations.

117.    As set forth herein, Defendant Hetman entered into a valid and enforceable Employee Confidentiality Agreement with Hino which imposed restrictions upon Hetman disclosing Hino's confidential information to third parties.

118.    Upon information and belief Defendants Boyer Consulting, Boyer, Shepley, and Schroeder knew that Hino had a contractual agreement with Hetman containing a covenant regarding disclosure of confidential information.

125.    Defendants Boyer Consulting, Boyer, Shepley, and Schroeder intentionally and without justification interfered with Hino's contractual relationship with Defendant Hetman, including but not limited to, inducing, encouraging and allowing him to violate his covenant not to disclose Hino's confidential information to third parties, including these Defendants.

126.    Defendants Boyer Consulting, Boyer, Shepley, and Schroeder's intentional interference with Hino's contractual relationship with Defendant Hetman directly and proximately caused material breaches of Defendant Hetman's contractual obligations owed to Hino, causing Hino to suffer and/or be exposed to irreparable harm and damages.

## COUNT IX
### Fraud
### (As to Defendant Hetman)

127.    Hino re-alleges and incorporates the preceding allegations.

128.    In acting as a purchasing agent and Purchasing Manager for Hino, Hetman represented to Hino that he was performing his duties in good faith and for the benefit of Hino.

129.    Hetman had a fiduciary duty to disclose to Hino attempts to subvert the procurement process by third parties, other employees, or himself.

130.    Each time that Hetman received or sent communications to the other Defendants as set forth above and failed to disclose the true purpose of the communication—to defraud Hino of

its profits while enriching Defendants—constituted a material omission that had the intended purpose and effect of misleading Hino into believing that Hetman was performing his job duties in good faith and in the best interests of Hino.

131.    At the time of each such communication, Hetman knew his actions were misleading to Hino.

132.    Even when confronted with his unlawful conduct Defendant Hetman refused to come clean about his unlawful conduct and the Boyer Enterprise and instead misrepresented and denied the truth.

133.    By concealing his conduct and failing to notify Hino of his activities to defraud the company, to whom he owed a fiduciary duty, Hetman intended for Hino to rely upon his material omissions and believe that Hetman was performing his job duties in compliance with Hino's policies and interests.

134.    Hino reasonably and did in fact rely upon Hetman's material omissions, believing that Hetman was acting in the company's best interests.

135.    As a direct and proximate result of Hetman's material omissions, and by continuing over the course of years to defraud Hino, as set forth above, Hino suffered irreparable harm and damages by way of, among other things, loss of goodwill, loss of confidential information, loss of suppliers and loss of profits.

## COUNT X
### Unjust Enrichment
### (As to All Defendants)

136.    Hino re-alleges and incorporates the preceding allegations.

137.    Hetman misappropriated Hino's confidential information to be used as part of the Boyer Enterprise to funnel and award bids to certain suppliers of Hino and divert funds related to those bid awards to themselves and their unlawful enterprise for personal gain.

138.    As a result of Defendants' wrongful and illegal conduct, Defendants have been unjustly enriched by receiving commissions and other payments from suppliers to Hino.

139.    As a direct and proximate result of the foregoing, Hino has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill.

### COUNT XI
### Mich. Comp. Laws § 600.2919a (Statutory Conversion)
### (As to All Defendants)

140.    Hino re-alleges and incorporates the preceding allegations.

141.    Hetman misappropriated, embezzled, and converted Hino's confidential information and money, as set forth above, for his own use and the use of the other Defendants.

142.    Defendants Boyer, Boyer Consulting, Shepley, and Schroeder received and possessed, and aided in the embezzlement and conversion of Hino's confidential information and money by Hetman, as set forth above.  Defendants Boyer, Boyer Consulting, Shepley, and Schroeder all knew that the confidential information and money were embezzled and converted.

143.    Defendants' actions, as set forth above, constitute violations of Mich. Comp. Laws § 600.2919a.

144.    As a direct and proximate result of Defendants' actions, Hino has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill.

145.    Under Mich. Comp. Laws § 600.2919a, Defendants are liable to Hino for treble damages, plus costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff Hino respectfully requests that this honorable Court enter one or more orders granting the following relief:

A.    A preliminary and permanent injunction enjoining Defendants from utilizing or disclosing any of Plaintiff's property and/or confidential business information;

B.    A preliminary and permanent injunction requiring Defendants to return to Plaintiff its property including without limitation any confidential business information;

C.    Monetary damages for each claim asserted in an amount to be established;

D.    Treble damages as provided for under 18 U.S.C. § 1964(c) and Mich. Comp. Laws § 600.2919a;

E.    Attorney' fees incurred by Plaintiff in bringing this action as provided for pursuant to 18 U.S.C. § 1964(c) and Mich. Comp. Laws § 600.2919a; and

F.    Such other damages as this court May deem just and appropriate

Plaintiff requests a trial by jury on all claims.

This 6th day of January 2020.          Respectfully Submitted,

By:    */s/ J. Michael Honeycutt, Esq.*
J. Michael Honeycutt (MI Bar # P60517)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
E-mail: jhoneycutt@fisherphillips.com
*ATTORNEYS FOR PLAINTIFF*