## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HINO MOTORS
MANUFACTURING U.S.A, INC.,

                                Case No. 2:20-cv-10031

               Plaintiff,

     v.

CHRIS HETMAN,

               Defendant.

## PLAINTIFF HINO MOTORS MANUFACTURING U.S.A., INC.'S MOTION FOR DEFAULT AND SANCTIONS AGAINST DEFENDANT CHRIS HETMAN

Plaintiff Hino Motors Manufacturing U.S.A., Inc. ("Hino Motors"), through counsel, hereby moved this Court to sanction and enter a Default Judgment against Defendant Chris Hetman pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 37.

During the litigation process Defendant Hetman has knowingly and willfully manufactured fraudulent evidence, provided false responses to written discovery and at deposition, and spoliated evidence.

Wherefore, Plaintiff Hino Motors seeks the following relief:

1.    The entry of a Default Judgment as to all claims and ordering of a trial or hearing on damages, or additionally and/or alternatively;

2.      An Order requiring Defendant Hetman to reimburse Plaintiff for its attorney fees and costs incurred in pursuing discovery which resulted in Defendant providing false testimony;

3.      An Order requiring Defendant Hetman to reimburse Plaintiff for its costs and fees for having to get evidence from third-parties that could and should have been provided by Defendant Hetman;

4.      An adverse instruction at trial that the factfinder may infer that Defendant Hetman's internet e-mail accounts if not spoliated would have revealed evidence of his wrong doing, and that Defendant Hetman's spoliation of the original invoices would have provided evidence that the invoices for Boyer Consulting were manufactured after the filing of this Lawsuit;

5.      That Defendant Hetman be ordered to present for deposition again with all costs and fees related to same to be paid by Defendant Hetman;

6.      An Order requiring Defendant Hetman to reimburse Plaintiff its costs and fees in bringing this Motion.

7.      Such other relief as the Court may deem just and appropriate.

Plaintiff has conferred with counsel for Defendant Hetman and Defendant does not consent to the relief request.

Plaintiff has contemporaneously filed a Memorandum in Support of this Motion with accompanying exhibits.

Respectfully submitted,

/s/ J. Michael Honeycutt
J. Michael Honeycutt (P60517)
Ronald E. Reynolds (P40524)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
(704) 334-4565
Fax: (704) 334-9774

jhoneycutt@fisherphillips.com
rreynolds@fisherphillips.com
**ATTORNEYS FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HINO MOTORS
MANUFACTURING U.S.A, INC.,

                                        Case No. 2:20-cv-10031

                Plaintiff,

        v.

CHRIS HETMAN,

                Defendant.

## CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.1(a), the undersigned hereby certifies that it reached

out to counsel for Defendant Hetman and was unable to secure his concurrence.

                        */s/ J. Michael Honeycutt, Esq.*
                        J. Michael Honeycutt
                        ATTORNEY FOR PLAINTIFF

4

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HINO MOTORS
MANUFACTURING U.S.A, INC.,

              Plaintiff,

    v.

CHRIS HETMAN,

              Defendant.

Case No. 2:20-cv-10031

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
## FOR DEFAULT JUDGMENT AND/OR SANCTIONS
## <u>AGAINST DEFENDANT HETMAN</u>

**FISHER & PHILLIPS LLP**
J. Michael Honeycutt
Ronald E. Reynolds
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
(704) 334-4565
jhoneycutt@fisherphillips.com
rreynolds@fisherphillips.com

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES……………………………………………………iii

STATEMENT OF ISSUES PRESENTED……………………………...…vi

CONTROLLING AUTHORITIES……………………………………………vii

I.    PRELIMINARY STATEMENT .....................................................8

II.   FACTUAL BACKGROUND .........................................................8

III.  LEGAL AUTHORITY FOR THE IMPOSITION OF SANCTIONS .............10

   A.  The Court has the Inherent Authority to Sanction Hetman's Conduct. .........10

   B.  Federal Rule of Civil Procedure 37 Provides for Sanctions for Discovery
       Abuses. ...........................................................................12

IV.   ARGUMENT..........................................................................13

   A.  Defendant Hetman Manufactured Fraudulent Evidence.................................14

   B.  Hetman Repeatedly Lied in His Responses to Written Discovery. ...............19

   C.  Hetman Spoliated Evidence. .......................................................26

   D.  Hetman's Litigation Conduct and Discovery Abuses Warrant Severe
       Sanctions, Including Default. ........................................................28

IV.   CONCLUSION ..........................................................................31

# INDEX OF AUTHORITIES

## Cases

*Adriana Int'l Corp. v. Thoeren*
913 F.2d 1406 (9th Cir. 1990) ...............................................................29

*Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*
No. C 04-2266 JW (PVT), 2010 WL 2035322, at *2 (N.D. Cal. May 19, 2010) ...27

*Alexander v. Del Monte Corp.*
No. 2:09-CV-12303-PJD, 2011 WL 134061, at *2 (E.D. Mich. Jan. 11, 2011).....28

*Anderson v. Dunn*
6 Wheat. 204 (1821)............................................................................11

*Aptix Corp. v. Quickturn Design Systems, Inc.*.......................................29
269 F.3d 1369 (Fed. Cir. 2001).

*Bailey v. Container Corp. of Am.*
No. CIV. A. C-1-84-0878, 1985 WL 25632, at *2 (S.D. Ohio Feb. 27, 1985).......27

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*
602 F.3d 742 (6th Cir. 2010) .................................................................13

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991)..............................................................................11

*Cone v. Tessler*
No. 16-11306, 2019 WL 1140223, at *3 (E.D. Mich. Feb. 15, 2019) ............. 10, 12

*Fink v. Gomez*
239 F.3d 989 (9th Cir. 2001) .................................................................11

*Iron Workers Local Union No. 25 v. Steel Enterprises, Inc.*
No. 0811414, 2008 WL 4857971, at *1 (E.D. Mich. Nov. 6, 2008)......................13

*Leon v. IDX Sys. Corp.*
464 F.3d 951 (9th Cir. 2006) ......................................................... 10, 11

*Lindsey v. Tom*
No. 16-CV-613-JDP, 2016 WL 6952354, at *1 (W.D. Wis. Nov. 28, 2016) .........28

*Link v. Wabash R. Co.*
370 U.S. 626 (1962)......................................................................11

*Malhoit v. S. Cal. Retail Clerks Union*
735 F.2d 1133 (9th Cir. 1984) .............................................. 11, 12

*McManus v. St. Joseph Hosp. Corp.*
79 F. App'x 170 (6th Cir. 2003) ................................................11

*Mills v. United Producers, Inc.*
No. 11-13148-BC, 2012 WL 4757917, at *6 .............................13

*Norris v. MK Holdings, Inc.*
734 F. App'x 950 (6th Cir. 2018)…………………………………30

*N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*
432 F. App'x 25 (2d Cir. 2011) ...............................................12

*Noel v. Workout World, Inc.*
No. CIV.A. 10-11966-RWZ, 2011 WL 2784571
at *3 (D. Mass. July 14, 2011) .......................................... 28, 29

*Plastech Holding Corp. v. WM Greentech Auto. Corp.*
257 F. Supp. 3d 867 (E.D. Mich. 2017)....................................13

*Rapaport v. Soffer*
No. 2:10-CV-935-MMD-RJJ, 2012 WL 6800377, at *4 (D. Nev. Dec. 31, 2021).29

*Roadway Express, Inc. v. Piper*
447 U.S. 752 (1980)......................................................................11

*Sommer v. Davis*
317 F.3d 686 (6th Cir. 2003) .....................................................13

*Trinity Glass Int'l, Inc. v. LG Chem Ltd.*
No. 09-5018RJB, 2010 WL 933894, at *2 (W.D. Wash. Mar. 11, 2010)..............27

*United States v. Hudson*
7 Cranch 32 (1812) .....................................................................11

*United States v. Kiszewski*
877 F.2d 210 (2d Cir. 1989).......................................................28

*United States v. Spivack*
376 F. App'x 144 (2d Cir. 2010) .................................................................28


**<u>Statutes</u>**
18 U.S.C. § 1621 ........................................................................................28


**<u>Other Authorities</u>**
Fed. R. Civ. P. 34(a)(1)………………………………………………...27
Fed R. Civ P. 34(a)(1)(B)……………………………………………..…27
Federal Rule of Civil Procedure 37 .............................................. passim
Fed. R. Civ. P. 37(a)(5)................................................................13
Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)……………………………………...13
Fed. R. Civ. P. 37(c).....................................................................12
Fed. R. Civ. P. 37(c)(1)................................................................12
Fed. R. Civ. P. 37 (c)(1)(C………………………………………………..13

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether the Court should impose sanctions including dismissal against Plaintiff for his abuse of the discovery process.

## <u>CONTROLLING AUTHORITY</u>

Federal Rule of Civil Procedure 37

*Cone v. Tessler*
No. 16-11306, 2019 WL 1140223, at *3 (E.D. Mich. Fed. 15, 2019)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR DEFAULT JUDGMENT AND/OR SANCTIONS
<u>AGAINST DEFENDANT HETMAN</u>**

Plaintiff Hino Motors Manufacturing U.S.A., Inc., through counsel, submits

this Memorandum of Law in Support of its Motion for Default and Sanctions against

Defendant Chris Hetman pursuant to the Court's inherent powers and Federal Rule

of Civil Procedure 37.

## I.     PRELIMINARY STATEMENT

Defendant Hetman has made an utter mockery of the discovery and litigation

process by, among other things, manufacturing fraudulent evidence, providing

demonstrably false responses to Hino's discovery requests and false testimony in a

sworn deposition, and by spoliating evidence.  Hetman's repeated, willful abuses

throughout the pendency of this case has prejudiced Hino, insulted the Court, and

undermined the judicial system. They warrant the severest of sanctions, including

the entry of a default judgment.

## II.     FACTUAL BACKGROUND

On January 6, 2020, Hino filed its Complaint asserting claims against

Defendant Hetman for breach of fiduciary duty, breach of a Confidentiality

Agreement, violation of the Computer Fraud and Abuse Act, violation of the RICO

statute, fraud, statutory conversion, and unjust enrichment. (Dkt. #1.) Hino alleged

8

that Hetman, as Hino's Purchasing Manager, surreptitiously shared in commissions paid to Boyer Consulting, LLC, a sales representative agency that represented suppliers that sought to sell auto parts to Hino that it would use in its business of manufacturing trucks. In other words, Hino asserts that Hetman sought and received "kickbacks" from Boyer in exchange for doing business—on Hino's behalf—with the suppliers represented by Boyer.

On or about September 5, 2019, Hino received an anonymous letter stating that "Chris Hetman is engaged in unethical business relations." (Kulick Dec. at **Exh. 1, Tab 2.**)  After performing an investigation and uncovering evidence of Hetman's misconduct on the company computer database, Hino called Hetman into the conference room and questioned him about his relationship with Boyer Consulting and its representatives: Todd Shepley, Bruce Schroeder, and Jonathan Boyer (hereafter "Boyer Consulting" or the "Boyer Parties"). (*Id*.) Hetman stated that he had never even heard of Boyer Consulting. (*Id*.)  Hino then sent Hetman home and issued him a document preservation letter advising him to preserve all documents and materials related to his interactions with Boyer Consulting. (*Id.* **Exh. 1, Tab 1**.)

Once the lawsuit was filed, Hino hoped Hetman would come clean so it could learn about the extent of Hetman's relationship with Boyer Consulting, his receipt of compensation from them, and what Hino confidential information he may have shared with third parties.   But Hetman steadfastly continued to deny any

9

wrongdoing, even concerning the most basic of allegations.  To this end, and as described below, Hetman has repeatedly provided demonstrably false responses to written discovery, including Requests for Admissions, Interrogatories and Requests to Produce; he has provided false testimony at deposition, spoliated evidence, and even manufactured and fabricated documentary evidence to support his lies.

### III.   LEGAL AUTHORITY FOR THE IMPOSITION OF SANCTIONS

The Court has two separate bases for imposing sanctions: the Court's inherent authority and Federal Rule of Civil Procedure 37.

### A.   The Court has the Inherent Authority to Sanction Hetman's Conduct.

"Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is tantamount to bad faith." *Cone v. Tessler*, No. 16-11306, 2019 WL 1140223, at *3 (E.D. Mich. Feb. 15, 2019) (report and recommendation) (citation and internal quotation marks omitted), *adopted*, 2019 WL 1139486 (E.D. Mich. Mar. 11, 2019).  "Bad faith is associated with conduct that is intentional or reckless." *Id.*

This Court has the inherent power "to levy sanctions in response to abusive litigation practices." *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006). Sanctions are appropriate when a party "acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 961.  As the Supreme Court has explained:

10

> It has long been understood that '[c]ertain implied powers must
> necessarily result to our Courts of justice from the nature of their
> institution," powers "which cannot be dispensed with in a Court,
> because they are necessary to the exercise of all others." *United States
> v. Hudson,* 7 Cranch 32, 34 (1812); see also *Roadway Express, Inc. v.
> Piper,* 447 U.S. 752, 764 (1980) (citing *Hudson*). For this reason,
> "Courts of justice are universally acknowledged to be vested, by their
> very creation, with power to impose silence, respect, and decorum, in
> their presence, and submission to their lawful mandates." *Anderson v.
> Dunn,* 6 Wheat. 204, 227 (1821); see also *Ex parte Robinson*, 19 Wall.
> 505, 510 (1874). These powers are "governed not by rule or statute but
> by the control necessarily vested in courts to manage their own affairs
> so as to achieve the orderly and expeditious disposition of cases. *Link
> v. Wabash R. Co.,* 370 U.S. 626, 630-631 (1962).

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (alteration in original) (parallel

citations omitted).   "As part of its inherent powers, a district court may

award attorney's fees in its discretion for bad faith or oppressive litigation

practices." *McManus v. St. Joseph Hosp. Corp.*, 79 F. App'x 170, 172 (6th Cir.

2003).

In order to impose sanctions, the Court need only find that Defendants acted

in bad faith.  *See Leon*, 464 F.3d at 961.  In this context, bad faith "includes a broad

range of willful improper conduct." *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir.

2001).  Actions constituting a "fraud" on the court or defile the "very temple of

justice" support a finding of bad faith.  *Chambers*, 501 U.S. at 47).  It is well

established that providing knowingly false statements to the Court and falsifying

evidence constitutes bad faith.  *See Malhoit v. S. Cal. Retail Clerks Union,* 735 F.2d

11

1133, 1138 (9th Cir. 1984); *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy,*

*Inc.*, 432 F. App'x 25 (2d Cir. 2011); *see also Cone*, 2019 WL 1140223, at *4.

**B.    Federal Rule of Civil Procedure 37 Provides for Sanctions for Discovery Abuses.**

Federal Rule of Civil Procedure 37 governs sanctions for various discovery

abuses.  *See* Fed. R. Civ. P. 37.  For instance, the failure to disclose information, to

supplement a response, or to admit a fact are sanctionable offenses.  *See* Fed. R. Civ.

P. 37(c).  If a party fails to provide proper discovery responses, he "is not allowed

to use that information or witnesses to supply evidence on a motion, at a hearing, or

at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ.

P. 37(c)(1).  In addition to or in lieu of disallowing the use of any previously-

undisclosed information, the Court may, on a motion by the opposing party, award

reasonable fees and expenses, inform the jury of the party's failure, or impose certain

other sanctions, including:

(i)     Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   Striking pleadings in whole or in part;

(iv)    Staying further proceedings until the order is obeyed;

(v)     Dismissing the action or proceeding in whole or in part; [and]

(vi)    **<u>Rendering a default judgment</u>** against the disobedient party.

Fed. R. Civ. P. 37(c)(1)(C) & (b)(2)(A)(i)-(vi) (emphasis added). "Rule 37(a)(5) further mandates the imposition of reasonable costs and attorney fees on a party or party's attorney incurred in making the motion" *Iron Workers Local Union No. 25 v. Steel Enterprises, Inc.*, No. 0811414, 2008 WL 4857971, at \*1 (E.D. Mich. Nov. 6, 2008) (quoting Fed. R. Civ. P. 37(a)(5)).

The movant has the burden to prove by a preponderance of the evidence that sanctions are warranted. *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 872-73 (E.D. Mich. 2017) (inherent authority); *Mills v. United Producers, Inc.*, No. 11-13148-BC, 2012 WL 4757917, at \*6 (E.D. Mich. Oct. 05, 2012) (Rule 37).  Orders imposing sanctions (whether under Rule 37 or a district court's inherent powers) are reviewed for abuse of discretion.  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010); *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).

## IV.    ARGUMENT

The Complaint alleges that Hetman funneled supply contracts to suppliers represented by Boyer Consulting, and in return Boyer Consulting would pay him a portion of the sales commissions it obtained on those contracts.  In discovery, Hino sought to obtain, among other things, information regarding the monetary compensation paid by Boyer to Hetman, the suppliers at issue, and relevant correspondence between Boyer Consulting and Hetman.  In response to Hino's

13

efforts, Hetman knowingly and willfully lied throughout the litigation process by manufacturing fraudulent evidence, by providing fraudulent responses to written discovery, by providing false deposition testimony, and by spoliating evidence.

**A.    Defendant Hetman Manufactured Fraudulent Evidence.**

When Hino first confronted Hetman about Boyer Consulting, he claimed he had never heard of Boyer Consulting and steadfastly denied that he ever received any compensation from it.  After this lawsuit was filed, Hetman lied in responding to written discovery asking if he had ever received compensation from Boyer (*see* Sec. B.1) and by failing to identify Boyer Consulting as an entity to whom he had provided professional services (*see* Sec. B.3).  It was only after Hetman learned that Hino had obtained copies of his 1099 forms from Boyer Consulting evidencing payments to him in the amount of $296,110.75 that he changed his tune and concocted the story that he provided professional consulting services to Boyer Consulting.   To support his lie, Hetman produced numerous invoices—each conveniently stating "Not relevant to Hino"—covering the time period of March 18, 2015, through December 9, 2019.  (Hetman Dep. Tr. at **Exh. 2**, pg. 84, and Exh. 22 to Dep. Tr.) These invoices purported to show 1,646.5 hours of alleged consulting work provided to Boyer Consulting.

For starters, all Boyer Parties unequivocally deny that Hetman ever sent them invoices or provided Boyer Consulting professional consulting services. (*See*

14

Declarations of J. Boyer, T. Shepley, and B. Schroeder at **Exhibits 3, 4, and 5** respectfully).  Moreover, these invoices are indisputably fabricated based on the following.

      1.  <u>Seven Invoices Were Addressed and Mailed to an Address Where Boyer Consulting Was Not Located and Would Not Be Until 14 Months Later.</u>

Hetman testified that he sent all invoices to Boyer Consulting at an address in St. Clair Shores, Michigan provided by Todd Shepley beginning in March of 2015. (Hetman Dep. 121, ll. 9-18.)  But Jonathan Boyer did not purchase the St. Clair Shores property until fourteen (14) months later on May 26, 2016.   (**Deed at Exh. 6**; J. Boyer Dec. at **Exh. 4**, ¶3) Accordingly, the first seven (7) invoices Hetman produced and claims to have served on Boyer Consulting were to the wrong address and one that *could not have been predicted* at that time.  These seven (7) invoices covered a period of fourteen (14) months.  The first invoice to the St. Clair Shores address was sent fourteen (14) months before the property was purchased.  In fact, the St. Clair Shores property was not even listed for sale until March 12, 2016. (*See* Listing at **Exh. 7**.)  Indeed, Boyer Consulting did not give notice of its change of address until July of 2016, some sixteen (16) months after Hetman "sent" the first invoice to the St. Clair Shores address—and by which time Hetman claims to have sent a total of eleven (11) invoices.  (*See* July 8, 2016 Boyer Consulting email notifying suppler of change of address at **Exh. 8**.)  Indeed, the 1099 for 2015 issued

to Hetman listed Boyer's address at 23720 Denton Street, Clinton Township, MI 48036.

At his deposition, Hetman could not provide a credible explanation as to why he allegedly mailed invoices to an address where Boyer was not located and would not be located for over a year, merely stating that he mailed the invoices to the address he was given.  (Hetman Dep. Tr. at Exh. 2, p. 122.) The only credible explanation is that he created these invoices *after* this litigation was filed in order to cover up his wrongdoing and lies.

   2.   <u>Hetman Fraudulently Testified That He Printed the Boyer Invoices on His Hino-Assigned Laptop to His Personal Printer.</u>

At his deposition, Hetman testified that he maintained the electronic invoices to Boyer Consulting on his company-issued laptop, and that he would print the electronic invoices off on his personal printer before serving them on Boyer Consulting:

```
15   Q.   I understand, but where is, how did you make those, how did
16        you make the copies that I have here of the invoices?
17   A.   I printed them out.
18   Q.   Okay, from what?
19   A.   What do you mean "from what"?
20   Q.   You printed them out?
21   A.   I had my hard copies and the electronic copies myself already
22        printed out so I made a copy. I kept the original
23        handwritten order and I made a copy of the invoice so I had
24        my own. . . .

13   Q.   But they were on the computer. How were you able to have
14        hard copies of them, though?
```

16

| 15 | A. | Because I have a printer and I used the Hino laptop to print |
| 16 |    | them out and I kept a copy for myself. |
| 17 | Q. | At Hino? |
| 18 | A. | No, at home. |
| 19 | Q. | At home. And you just used the company laptop. |
| 20 | A. | Right. |
| 21 | Q. | Okay. |
| 22 | A. | And I kept every written work order as well. |
| 23 | Q. | So on your computer you were able to copy from a remote |
| 24 |    | location off your laptop? |
| 25 | A. | Print. |

| 1 | Q. | Yeah, print. |

(Hetman Dep. Tr. at Exh. 2 pg. 146-148.)

However, it was impossible for Hetman to have printed from his Hino laptop to his personal printer, as Hino policy and practice was to configure company-issued laptops to *prevent* printing from remote or third-party printers. (Morikawa Dec. at **Exh. 9**) If an employee desired to add a printer, the employee would have to submit a written request to Hino's Information Technology Department. (*Id*. at ¶10.) There is no record of Hetman ever making such a request. (*Id*. at ¶11.) More importantly, Hetman's Hino laptop was never configured to allow for remote printing. (Morikawa Dec. at Exh. 9, ¶8; Lieb Dec. at Exh. 10, ¶ 14.) An expert forensic analysis of Hetman's laptop conclusively establishes that it had *never* been configured or altered to allow for printing to a personal or third-party printer. (Lieb Dec. at Exh. 10, ¶ 15.) Indeed, the only printers ever associated with Hetman's laptop were all Hino-owned and maintained on Hino property, except for a printer

17

kept at Roush Industries with whom Hino shared a workspace. (Morikawa Dec. at Exh. 9, ¶8.) Accordingly, Hetman's testimony that he printed from his Hino laptop to a printer at his home is demonstrably false. Tellingly, when Hetman was requested in discovery to make his personal printer available for inspection he claimed that it had been "discarded," preventing Hino from gathering additional evidence proving his deposition testimony false. (*See* Defendant's Response to Third Set of Interrogatories, No. 1 at **Exh. 11**.)

3.  <u>Hetman Fraudulently Testified That He Created the Invoices on His Hino Laptop</u>.

At his deposition, Hetman repeatedly testified that he created and kept the Boyer Consulting electronic invoices on his Hino laptop:

```
25   Q.   You have a set so they are not in digital form anywhere?
1.   A.   The native file I believe it was on the Hino laptop.
2.   Q.   For all of these.
3.   A.   Yeah. I was employed with Hino during that time and that
4         was the laptop and computer that I used.
```

(Hetman Dep. Tr. Pgs. 146-147.) A forensic review of Hetman's computer established that there were no invoices to Boyer Consulting on Hetman's laptop. None. (Lieb Dec. at Exh. 10, ¶12.) Accordingly, Defendant Hetman's testimony is again demonstrably false.

4.  <u>Hetman Fraudulently Testified That in Performing His Consulting Work for Boyer, He Performed Internet Searches and Created Work Product on His Hino Laptop.</u>

18

Hetman testified at his deposition that in carrying out his professional consulting services for Boyer Consulting that he performed internet research on his Hino laptop. (Hetman Dep. Tr. at Exh. 2, pgs. 89-90, 97.)  When questioned about what sites he visited, he testified: "Society of Automotive Engineering and A.S.T.M. websites." (*Id.* at 97.) The Society of Automotive Engineering website is found at sae.org and the A.S.T.M. website is found at astm.org.  Hetman failed to recall any other sites.  A forensic review of Hetman's laptop revealed that he had not visited either of the Internet sites he testified as having visited via his Hino laptop. (Lieb Dec. at Exh. 10, ¶¶ 17-18**.**)  Nor are there any other websites visited that appear to relate to Defendant Hetman's alleged consulting work.

**B.      Hetman Repeatedly Lied in His Responses to Written Discovery.**

1.  Hetman Lied in Responding to Request for Admission No. 2.

On August 9, 2020, Defendant Hetman fraudulently denied Request for Admission No. 2 regarding whether he had received any compensation from Boyer Consulting. (Responses to Requests for Admissions at **Exh. 12.**)  Hetman doubled down on his fraudulent denial a week later on August 13, 2020, when responding to Plaintiff's First Set of Interrogatories, wherein Interrogatory No. 19 solicited: "If Your answer to any First Set of Requests for Admission is anything other than an unqualified admission state in detail Your reason for denial and identify any documents or evidence supporting Your denial." (Ex. 3 at 15.) Hetman answered,

"[t]hey were denied because they were untrue in fact." (Responses to First Interrogatories at **Exh. 13.)**

In responding to Request for Admission No. 2, Defendant Hetman "Denied" having received compensation from Boyer Consulting as follows:

> 1. Admit that You have received compensation from Defendant Boyer Consulting.

> **Denied.**

(*See* Exh. 12.)  Defendant's response is a blatant lie.  Hetman reiterated this lie to Request for Admission No. 2 three months later on December 10, 2020, by failing to identify Boyer Consulting as an entity he had received compensation from in his response to Second Set of Interrogatories No. 2. (*See* Section B.3 below).

The now undisputed evidence shows that Hetman received at least **$296,110.75** from Boyer Consulting, as evidenced by 1099s issued to him by Boyer Consulting for the years 2015 through 2019. (1099s attached as Exh. 21 to Hetman Dep. Tr. at Exh. 2.) It is also confirmed by Defendant Hetman's 2015-2019 tax returns. (**Exhs. 15, 16, 17, 18,** and **19** attached to Hetman Dep. Tr. and pgs. 76-80.) It is further confirmed by checks from Boyer Consulting to Hetman. (Checks at **Exh. 20** to Hetman Dep. Tr. at Exh. 2 and pg. 80-83.)  Ultimately, when presented with the 1099s, tax returns, and checks at his deposition, Hetman acknowledged their authenticity and the fact that he had been compensated by Boyer Consulting. (*See* Hetman Dep. Tr. at Exh. 2, pg. 75-86.)

20

2.  <u>Hetman Lied in His Responses to Hino's First Set of Interrogatories.</u>

On August 13, 2020, Defendant Hetman lied in his responses to First Set of Interrogatories Nos. 3, 14, and 18 (*see* Responses to First Set of Interrogatories at **Exh. 13)** by failing to identify the e-mail addresses that he used to communicate with Boyer Consulting as follows:

> 3.  Identify any and all e-mail addresses that You have used to conduct business related to Hino or for which You, including Your agents and representatives, have used to perform work with any Defendant.
>
> **Response: chetman@hmmusa.com**
>
> 14. Identify all email addresses that You have used to communicate with any Defendant.
>
> **Response: chetman@hmmusa.com**
>
> 18. Identify the email access information including passwords for any internet-based email accounts in Your control that You have used to transact business relating to Hino, including but not limited to access information to Chase Group LLC.
>
> **Response: None**

Hetman failed to identify his personal internet-based email accounts of chasegroupllc@gmail.com and chrishetman@hotmail.com, which he undisputedly used to conduct Hino business and/or communicate with Boyer Consulting.  The attached emails confirm that Hetman utilized his personal Gmail and Hotmail email addresses to communicate with Boyer and/or to transact Hino business.  (Lieb Dec.

at **Exh. 10,** (Hotmail) Exh. 12 thereto; Hetman Dep. Tr. at Exh. 2 (gmail) pp. 102, 116-117, Exh. 24 and 32 thereto; see also **Exh. 18**.)

Hetman also lied when asked in response to Interrogatory No. 18 to provide information and passwords for such internet-based email accounts, responding: "None." (**Exh. 13**)  This was another brazen lie.  Indeed, weeks later, and after learning he was caught in a lie, Defendant provided a password for his chasegroupllc@gmail.com account.  However, the password did not work and by that time the account was no longer active, resulting in spoliation of evidence which is addressed below at Section C.1.

3.  Hetman Lied in Responding to Hino's Second Set of Interrogatories.

Hetman Lied in Responding to Interrogatory No. 2 by wholly failing to identify Boyer Consulting as an entity to whom he provided professional services.

> 2.  Identify all persons or entities You have provided professional consulting services to since January 1, 2010.
>
> **Response: 2) Coleman Research Group, 575 Fifth Avenue 21st floor New York, New York 10017. (212)-223-0185.  Scope of work provided is verbal consultation for various market research projects.**
>
> **Third Bridge Group, 1411 Broadway, New York, NY 10018. (646)-532-4569 Scope of work performed is verbal communication for various market research projects.**

22

(*See* Responses to Second Interrogatories at **Exh. 14**.)  Hetman's response is false because it fails to identify Boyer Consulting as an entity to whom he had provided professional services.  This is undisputed as Hetman now admits that in the years 2015 through 2019 he was paid by Boyer Consulting a whopping **$296,110.75**.  In fact, at his deposition, Hetman testified that he had continuously provided professional services to Boyer Consulting from 2015 through 2019 and confirmed that 1099s had been issued to him from Boyer Consulting, that checks from Boyer Consulting were issued to him, and that his own tax returns reflected compensation paid to him from Boyer Consulting.  (Hetman Dep. Tr. at Exh. 2, pp. 75-86 and 1099s at Exh. 21; Checks at Exh. 20, Tax Returns at Exhs. 15-19 thereto.)   The invoices Defendant Hetman testified as accurately reflecting his consulting work for Boyer Consulting reflects he billed Boyer Consulting **1,646.5** hours of work from 2015 to 2019.

4.  Hetman Lied in Responding to Hino's First Set of Requests for Production.

On August 13, 2020, Defendant Hetman lied in responding to First Set of Requests for Production Nos. 3 and 10 seeking the production of all e-mails between Defendant Hetman and the Boyer parties as follows.

> 3.  Produce all e-mail communications and ESI between you and of the following: Johnathan Boyer, Bruce Schroeder, Todd Shepley and/or Boyer Consulting, LLC.

23

> **RESPONSE: All these are on the company computer which Hino has possession of.**

10. Produce any and all e-mails sent by You to or received by you from each of the following e-mail addresses: bs1@bright.net, tshepley@kent.net, bruces@theboyerllc.com; todds@theboyerllc.com, and Johnb@theboyerllc.com.

> **RESPONSE: All are on the company computer which I do not possess.**

(Responses to First RTPs at **Exh. 15**.)  Hetman's assertion that all e-mails he used to correspond with Boyer Consulting and the e-mail addresses of bs1@bright.net, tshepley@kent.net, bruces@theboyerllc.com; todds@theboyerllc.com, and Johnb@theboyerllc.com were all on his Hino Laptop and through his Hino assigned e-mail address of chetman@HMMUSA.com is not true.  As discussed *supra* at Section B.2, Hetman also utilized the internet-based e-mail addresses of chasegroupllc@gmail.com and chrishetman@hotmail.com to conduct Hino business and/or communicate with Boyer Consulting as evidenced by the e-mails attached hereto.  (Lieb Dec. at **Exh. 10,** (Hotmail) Exh. 12 thereto; Hetman Dep. Tr. at Exh. 2 (gmail) pp. 102, 116-117, Exh. 24 and 32 thereto; see also **Exh. 18**.)  These emails were not located on the Hino laptop and none were produced by Hetman in discovery.

5. Hetman lied in responding to Hino's Second Set of Requests for Production.

24

Hetman lied in responding to Requests for Production Nos. 1 and 2 on December 10, 2020. Those Requests sought the production of documents pertaining to Hetman's alleged provision of services to Boyer Consulting:

> 1. Produce all documents, notes, materials, data and work product evidencing or relating to the work You allegedly provided to Boyer Consulting as set forth in each invoice that You issued to Boyer Consulting, LLC from January 1, 2015 to present.
>
> **Response: No further documentation available to provide. Data provided is on Hino's laptop and Hino's cell phone which is in Hino's possession. Verbal consultation and advice provided to Boyer Consulting.**
>
> 2. Produce all correspondence including e-mails between You and Boyer Consulting, LLC, including but not limited to communications with Todd Shepley, Bruce Schroeder, and/or Johnathan Boyer, related to Your provision of consulting services to Boyer Consulting, LLC.
>
> **Response: Hino laptop and Hino cell phone used to correspond which Hino has in its possession.**

(Responses to Second RTPs at **Exh. 16**.)  Hetman's responses are demonstrably false.  A forensic examination of Hetman's computer revealed no invoices, nor any documents related to Hetman's alleged provision of consulting services to Boyer Consulting. (Lieb Dec. at Exh. 10, ¶ 12**.**)  Nor was there any correspondence whatsoever between Hetman and Todd Shepley, Bruce Schroeder, or Jonathan Boyer found on his laptop unrelated to Hino. (*Id.* at 9.)  Moreover, it is simply not credible that Hetman would have performed 1,646.5 hours of consulting work utilizing his Hino laptop and that there not be one shred of evidence that he

25

performed the approximately $300,000 in work he now claims to have performed. Finally, as set forth in detail *supra* (Section A), the invoices Hetman produced after substantial delay are demonstrably fraudulent.

## C. Hetman Spoliated Evidence.

Hetman spoliated evidence by failing to preserve his internet e-mail account that he used to communicate with Boyer Consulting and by failing to preserve the originals of his alleged invoices to Boyer Consulting.

### 1. Hetman Spoliated his Internet Email Account.

Hino first spoke with Defendant Hetman about his relationship with Boyer Consulting on December 13, 2019. After Hetman failed to respond truthfully, Hino provided him with a document preservation letter. (Exh. 1, Tab 1.)  In that letter, Hetman was advised about the likelihood of litigation and of his duty to preserve evidence related to his communications with Boyer Consulting.

Hetman thereafter violated his duty to preserve evidence by failing to preserve and maintain his personal internet-based email account of chasegroupllc@gmail.com, which he used to conduct Hino business and communicate with Boyer Consulting.  E-mails obtained from third-parties reveal that Hetman utilized that e-mail account to communicate with Boyer Consulting. (Hetman Dep. Tr. at Exh. 2 (gmail) pp. 102, 116-117, Exh. 24 and 32 thereto; see also **Exh. 18**.)

26

2.  <u>Hetman Spoliated the Original Invoices to Boyer Consulting.</u>

At his deposition, Hetman testified that he kept originals of the invoices at his

home:

```
1      A.     With Boyer Consulting and then I have the paper copy for
2             myself.  The original.
3      Q.     And those are where?  At your home?
4      A.     Yeah, I provided copies and gave them to you as well.
5      Q.     Okay, but if I wanted to see the originals, we could get
6             those?
7.     A.     Yeah.
```

(Hetman Dep. Tr. at pg. 88.)   Shortly after the deposition, Hino served a discovery

request seeking to inspect the original invoices, as it is permitted to do pursuant to

the Federal Rules.  *See* Fed. R. Civ. P. 34(a)(1); *Trinity Glass Int'l, Inc. v. LG Chem

Ltd.*, No. 09-5018RJB, 2010 WL 933894, at *2 (W.D. Wash. Mar. 11, 2010)

("[P]arties are entitled to 'inspect' original documents under Rule 34(a)(1)(B)

. . . .").  "Nothing in Rule 34 . . . authorizes a party to unilaterally decide to produce

copies of documents rather than allowing the requesting party to inspect and copy

the original documents." *Advanced Microtherm, Inc. v. Norman Wright Mech.*

*Equip. Corp.*, No. C 04-2266 JW (PVT), 2010 WL 2035322, at *2 (N.D. Cal. May

19, 2010); *see Bailey v. Container Corp. of Am.*, No. CIV. A. C-1-84-0878, 1985

WL 25632, at *2 (S.D. Ohio Feb. 27, 1985).  Hino expected that an inspection of the

original hand-written invoices would likely reveal evidence supporting that they

were all created after litigation ensued.  In response, Hetman claimed he could not

27

find them and they must have been discarded.  (*See* Exh. 11.) While we doubt that is the case, Defendant had an affirmative duty to preserve this evidence and negligence is not an excuse. *Alexander v. Del Monte Corp.*, No. 2:09-CV-12303-PJD, 2011 WL 134061, at *2 (E.D. Mich. Jan. 11, 2011). "… the culpable state of mind factor is satisfied where evidence was destroyed negligently, even without intent to breach a duty to preserve it." *Id.* (citation omitted).

### D.   Hetman's Litigation Conduct and Discovery Abuses Warrant Severe Sanctions, Including Default.

To summarize, Defendant Hetman has lied under oath, destroyed evidence that hurt his case, and manufactured false evidence to support it. And these are not isolated incidents; each has occurred numerous times during the pendency of this case. (*See generally supra*.) Courts faced with misconduct as clear, wanton, and pervasive as Hetman's have regularly imposed the sanction of default.

First, Hetman's misconduct is serious. Putting forth false testimony "is severe misconduct." *United States v. Spivack*, 376 F. App'x 144, 145 (2d Cir. 2010). It also happens to be a federal crime. *See* 18 U.S.C. § 1621; *see also United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir. 1989) (noting that perjury was a serious crime "since false testimony strikes at the heart of administering the . . . law"). Similarly, "fabricating evidence is a serious abuse of the litigation process." *Lindsey v. Tom*, No. 16-CV-613-JDP, 2016 WL 6952354, at *1 (W.D. Wis. Nov. 28, 2016); *see Noel v. Workout World, Inc.*, No. CIV.A. 10-11966-RWZ, 2011 WL 2784571, at *3 (D.

28

Mass. July 14, 2011) ("Fabricating evidence and filing it with the court constitutes serious misconduct, subject to both civil and criminal penalties.").

For example, in *Aptix Corp. v. Quickturn Design Systems, Inc.*, the Federal Circuit affirmed the sanction of dismissal and an award of the attorney's fees where the plaintiff knowingly relied upon forged documents, of which he was the architect, in the lawsuit. 269 F.3d 1369 (Fed. Cir. 2001). There, the court found that "[t]he record amply supports the district court's finding that Dr. Mohsen submitted the seventeen pages of his 1989 notebook to the court after adding new material to the signed and dated pages. Indeed, the Ink On Photocopy version retained the impressions of his pen as he added material to his purported 1989 notebook." *Id.* at 1374. The evidence here similarly and conclusively shows that Hetman has fabricated the "consulting" invoices. *See supra* (Section IV.A). Accordingly, it compels the same level of sanction.

Second, Hetman's conduct has pervaded the entire discovery process of this case. "A court weighing sanctions for discovery abuses may consider a party's conduct as a whole throughout the discovery process." *Rapaport v. Soffer*, No. 2:10-CV-935-MMD-RJJ, 2012 WL 6800377, at *4 (D. Nev. Dec. 31, 2021) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). Where a party has engaged in misconduct "throughout the discovery process," this supports the imposition of drastic sanctions—including dismissal if the party is a plaintiff and

default if a defendant. *See Norris v. MK Holdings, Inc.*, 734 F. App'x 950 (6th Cir. 2018) (citation omitted). A party's repeated failure to improve their conduct during the pendency of a case serves as an "indicat[or] that lesser sanctions would . . . fail[]." *Id.* Such is the case here, where Hetman has lied repeatedly throughout the litigation process and continued to do so.

Worst of all perhaps is Hetman's willingness to double down on his lies. When initially confronted by Hino, Hetman claimed he had never even heard of Boyer Consulting. When presented with irrefutable evidence that he had, Hetman lied again, now stating that he had not received any money from Boyer. Then Hino showed Hetman evidence that he had received payments from Boyer, but Hetman *still* did not come clean—instead, he insisted that the payments were for "consulting" work (instead of kickbacks for channeling Hino's business to Boyer-represented suppliers). Then, to support that lie, Hetman manufactured fraudulent invoices for consulting work that he never performed. Now, Hino has pointed out numerous inconsistencies and impossibilities in his story, like the fact that Hetman could not have printed out the invoices on his home printer as he claims, and that Hetman could not have sent invoices to Boyer at an address in St. Clair Shores on the dates he claims. Once again, Hetman has refused to come clean and instead chosen to lie and destroy the original hand-written invoices and his home printer so Hino cannot

30

inspect them. Hetman's conduct shows that no lesser sanction than default judgment is appropriate.

## IV.    CONCLUSION

The foundation for this matter is beyond dispute.  Defendant Hetman has repeatedly engaged in substantial litigation and discovery abuses, summarized as follows:

- Hetman manufactured fraudulent invoices where the record evidence is: that 7 invoices were addressed to Boyer Consulting at an address in St. Clair Shores, Michigan which Boyer did not purchase until fourteen 14 months after the first invoice, and a full year before the property was listed for sale.

- Hetman lied when he testified at Deposition that he maintained invoices to Boyer Consulting on his Hino laptop and printed them off to his personal computer where the undisputed evidence is that his Hino Laptop would not allow for printing to a third-party printer, his assigned laptop was never attached to a printer other than those in the Hino network, and there were no invoices ever maintained or created on the Laptop.

- Hetman repeatedly lied about not providing services to Boyer Consulting in responding to Requests for Admission and Interrogatories.

- Hetman lied when asked to identify all e-mail accounts he used to conduct Hino business and/or to communicate with Boyer Consulting.

- Hetman lied when he testified that he performed consulting work on his Hino assigned laptop for Boyer and visited the websites of sae.org and astm.org in performing those duties where the undisputed evidence is that he never visited either of those websites and there is no evidence that he ever performed such work.

- Hetman spoliated evidence by: (i) failing to maintain and preserve emails associated with his internet-based email accounts, and (ii) by failing to preserve originals of the invoices.

Hetman's misconduct has substantially hindered Hino's ability to obtain information necessary to prove its case.  The discovery process is a truth-seeking mechanism that breaks down when a party engages in fraud. That has happened here. Beyond that, Hetman's serious and repeated misconduct has undermined the integrity of the judicial process. Justice demands that he be held accountable and sanctioned by entry of a Default Judgment and/or other appropriate sanctions as set forth in Plaintiff's Motion.

Respectfully submitted,

*/s/ J. Michael Honeycutt*
J. Michael Honeycutt (P60517)
Ronald E. Reynolds (P40524)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
(704) 334-4565
Fax: (704) 334-9774
jhoneycutt@fisherphillips.com
rreynolds@fisherphillips.com
**ATTORNEYS FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HINO MOTORS
MANUFACTURING U.S.A, INC.,

                 Plaintiff,

      v.

CHRIS HETMAN,

                 Defendant.

Case No. 2:20-cv-10031

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2021, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will serve it on the attorneys of record.

*/s/ Ronald E. Reynolds*
Ronald E. Reynolds
ATTORNEY FOR PLAINTIFF