UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HINO MOTORS MANUFACTURING U.S.A., INC., | Case No. 20-cv-10031 Honorable Terrence G. Berg Magistrate Judge Elizabeth A. Stafford |
| Plaintiff, | |
| v. | |
| CHRIS HETMAN, | |
| Defendant. | |

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S REQUEST FOR AWARD OF DAMAGES AND ATTORNEY'S FEES (ECF No. 75)**

## I.      Introduction

In January 2022, the Court entered default judgment against

Defendant Chris Hetman as a sanction for his discovery abuses.  ECF No.

67; ECF No. 69.  The Honorable Arthur J. Tarnow referred the matter to the

undersigned under 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing on

damages.[1]  ECF No. 69.  Plaintiff Hino Motors Manufacturing U.S.A., Inc.,

seeks an award of $2,443,205.80 in damages and $509,617.05 in

---

[1] The case was later reassigned to the Honorable Terrence G. Berg.

attorney's fees and costs.  ECF No. 75.  After reviewing the record, the Court **RECOMMENDS** that Hino's request be **GRANTED IN PART AND DENIED IN PART**.

## II.   Background

Hino is a truck manufacturer and Hetman was employed as its purchasing manager.  ECF No. 1, PageID.3; ECF No. 75-1, PageID.4600-4602.  Hino alleges that Hetman disclosed its confidential information—including its price targets, business strategy, and other suppliers' bids—to Boyer Consulting, LLC, a supplier-side sales representative agency, as part of a scheme to funnel contracts to Boyer's suppliers.  ECF No. 1, PageID.4-5, 7-11.  In return, Boyer paid Hetman part of the commissions. *Id.* at PageID.7, 9, 14-15.  Hino's policy is to avoid working with sales representative agencies because their commissions are passed on to Hino through higher purchase prices.  ECF No. 75-1, PageID.4603.

Hino brought claims against Hetman for violating the Racketeer Influenced and Corrupt Organizations Act (RICO), tortious interference with contract, unjust enrichment, statutory conversion, violating the Computer Fraud and Abuse Act, breach of fiduciary duty, breach of contract, and fraud.  ECF No. 1, PageID.13-26.  Boyer and its agents—Johnathan Boyer, Todd Shepley, and Bruce Schroeder—settled with Hino and were

2

dismissed from the action in November 2020.  ECF No. 28.  Since default judgment was entered against Hetman, Hino seeks damages on its breach of fiduciary duty, breach of contract, and RICO claims.  ECF No. 75.

### III.   Analysis

### A.

When default judgment is entered, "the well pleaded factual allegations in the [c]omplaint, except those relating to damages, are taken as true."  *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).  But "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013) (internal quotation marks omitted).  So "[e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  10A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 2688.1 (4th ed. 2022).

Damages must also be proved.  *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).  While courts typically hold evidentiary hearings on damages, they are unnecessary "if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of

3

ascertainment from definite figures in the documentary evidence or affidavits."  *Mexico Bus. Contacts, S.C. v. Alken-Ziegler, Inc.*, No. 12-13529, 2012 WL 5379151, at *2 (E.D. Mich. Oct. 11, 2012) (internal quotation marks and citations omitted).  A plaintiff's burden in proving damages "is relatively lenient," as the plaintiff "need only prove that the compensation sought relates to the damages that naturally flow from the injuries pled."  *HTS*, 954 F. Supp. 2d at 947-48 (internal quotation marks omitted).  And "broad latitude is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification."  *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 759 (7th Cir. 2011) (internal quotation marks omitted).

Since Hetman does not dispute Hino's evidence of damages and makes only legal arguments, the Court may determine the amount of damages from the briefing.

**B.**

Hino seeks damages on its breach of fiduciary duty, breach of contract, and RICO claims.  ECF No. 75, PageID.4582-4588, 4590-4591. The Court addresses each claim in turn, considering whether the factual allegations support the cause of action and whether Hino has a right to an award of damages.

4

**1.**

To succeed on a claim for breach of fiduciary duty, a plaintiff must prove: "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666 (2020). "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another," and a breach of that duty occurs when the fiduciary "abuses the influence and betrays the confidence." *Id.* at 666 n.13 (internal citation and quotation marks omitted).

Hino's factual allegations meet each of those elements. A sales representative who serves as his employer's agent can owe a fiduciary duty. *Radiant Global Logistics, Inc. v. BTX Air Express of Detroit*, No. 18-12783, 2021 WL 1313236, at *9 (E.D. Mich. Apr. 8, 2021) (citing *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 8759220, at *4 (W.D. Mich. Dec. 14, 2015)). Hetman, in his role as a purchasing manager for Hino, negotiated supplier contracts and "obtain[ed] the materials and parts at the most competitive price from the competing suppliers." ECF No. 1, PageID.3. He also had a duty to protect Hino's confidential information. *Id.* at PageID.5, 6, 21; ECF No. 1-1, PageID.28. Hino alleges that Hetman breached his fiduciary duty by "misappropriating and misusing Hino's

5

confidential information for the benefit of himself and [Boyer]." ECF No. 1, PageID.21.

Hino seeks disgorgement of Hetman's kickback payments. As the Michigan Court of Appealed explained:

> A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency. A corollary to this rule is that all profits made in the execution of a fiduciary's agency belong to the principal. Accordingly, if an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer for the profit made.

*Cent. Cartage Co. v. Fewless*, 232 Mich. App. 517, 524-25 (1998) (internal citations and quotation marks omitted).

Hetman contends that Hino failed to plead a disgorgement theory of damages in the complaint. ECF No. 77, PageID.4876. The Court agrees. Federal Rule of Civil Procedure 8(a)(3) requires a plaintiff to make "a demand for the relief sought, which may include relief in the alternative or different types of relief." Hino's complaint requests injunctive relief and monetary damages but fails to ask for the equitable remedy of disgorgement. ECF No. 1, PageID.21, 26. While Hino's factual allegations would support a claim for disgorgement, it failed to put Hetman on notice

that such relief was sought.  *See Niecko v. Emro Marketing Co.*, 769 F. Supp. 973, 991 (E.D. Mich. 1991).[2]

But Hino may recover Hetman's kickback payments and Boyer's commissions as monetary damages.  ECF No. 75, PageID.4584.  A plaintiff has a right to recover "tort damages for harm caused by the breach of duty arising from the relation."  Restatement (Second) of Torts § 874 cmt. b (2022).  Hino claims that it was harmed by the commissions suppliers paid to Boyer (and that Boyer paid to Hetman) because those costs were passed on to Hino through higher purchase prices.  ECF No. 75-1, PageID.4603; ECF No. 78, PageID.4883, 4888.  The pleadings support this theory of damages.

The complaint alleges that Hino lost its competitive position, as sharing confidential information with suppliers "increase[d] the cost for Hino to do business…[and] undermine[d] Hino's ability to negotiate and achieve competitive pricing with its suppliers and compromise[d] the integrity of the procurement process."  ECF No. 1, PageID.4-5, 21.  Hino also alleged that Hetman and Boyer collected commissions from the scheme and "unlawfully

---

[2] Hino's disgorgement theory also fails because it has an adequate remedy at law since it can recover Hetman's kickback payments as monetary damages.  *See Everett v. Nickola*, 234 Mich. App. 632, 637 (1999) ("[A]n equitable remedy is neither necessary nor appropriate where a resolution under the law is available").

siphon[ed] money from Hino…for their own personal gain."  *Id.* at PageID.7, 9.  Thus, Hino alleged that Hetman and Boyer increased Hino's costs by siphoning money for their personal gain through the commissions.

Hetman argues that Hino offers no evidence of the amount it overpaid for parts from Boyer's suppliers.  ECF No. 77, PageID.4878.  He cites *Ford Motor Co. v. Toth*, in which Ford's buyer favored one supplier in exchange for personal benefits.  872 F.2d 1025 (Table) (6th Cir. 1989).  The trial court directed a verdict for Ford on some claims but upheld the jury's award of no damages, as Ford introduced no evidence about the fair market value of the goods for which it was allegedly overcharged.  *Id.*  The Sixth Circuit affirmed.  *Id.*  But Hetman overlooks the fact that Hino does not seek damages for the price of the parts.  Instead, Hino says that it was harmed because the total purchase price was inflated by the amount of the commission payments.  Hino offers evidence of the amounts of those commissions, as discussed below.  Hetman offers no evidence showing that Hino did not incur these added amounts.

Hetman's income tax records show that Boyer paid him a total of $296,110.75 between 2015 and 2019.  ECF No. 39-1, PageID.924-930. Hetman confirmed that the tax records were accurate and that the payments—while classified on the forms as dividends—were for work

8

performed for Boyer.  ECF No. 40-2, PageID.2666-2671.  Hetman does not dispute Hino's calculation of these funds or the assertion that they represent his share of the commissions.  Thus, Hino may recover $296,110.75 for Hetman's kickback payments.

Boyer's sales director Bruce Schroeder created charts for the commissions Boyer earned from its suppliers' sales to Hino between 2016 and 2019.  ECF No. 39-3, PageID.1456.  Those charts show that Boyer earned commissions totaling $807,068.60.  *Id.* at PageID.1461-1464.  Less the $274,110.75[3] paid to Hetman between 2016 and 2019, Boyer retained $532,957.85 in commissions.  Thus, Hino may recover the $532,957.85 it allegedly overpaid for Boyer's commissions.  Together with Hetman's $296,110.75 in kickbacks, Hino should be awarded $829.068.60 for its breach of fiduciary duty claim.

## 2.

Hino's breach of contract claim supports the same awards.  A party asserting a breach of contract claim must prove: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the

---

[3] This figure does not include the $22,000.00 Hetman received from Boyer in 2015.

party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014).

Hino has pleaded these elements. Hetman signed a confidentiality agreement stating:

> The Employee agrees that he/she shall not disclose any such secret or confidential information to any person other than authorized [Hino] personnel…. Such confidential materials include, but are not limited to, the contents of files, correspondence and information pertaining to [Hino] dealers or potential dealers; all non-public technical and product information; and all writings, drawing, specifications, machine-readable data, source codes and object codes.

ECF No. 1-1, PageID.28. Hino alleges that Hetman breached the agreement by disclosing Hino's confidential information, including its price targets, business strategies, and competing suppliers' bid information. ECF No. 1, PageID.9-11, 22. Because of the breach, Hino allegedly overpaid Boyer's suppliers. *Id.* at PageID.22. As discussed, Hino claims that it was harmed because it ultimately bore the commissions suppliers paid Hetman and Boyer. Thus, under its breach of contract claim, Hino has a right to recover commission payments of \$532,957.85 to Boyer and \$296,110.75 to Hetman.

**3.**

Finally, Hino has a right to treble damages for its RICO claim. To prove a RICO violation, a plaintiff must show: "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013). An "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes predicate acts, including wire fraud under 18 U.S.C. § 1343. § 1961(1)). And a "pattern" requires two or more predicate acts of racketeering activity. § 1961(5). To state a RICO claim under 18 U.S.C. § 1962(a),

> Plaintiffs must allege that each Defendant conducted or participated, directly or indirectly, in the conduct of the Alleged RICO Enterprise's affairs. Participation in the conduct of an enterprise's affairs requires proof that the defendant participated in the operation or management of the enterprise. An enterprise is operated not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.

*Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602-03 (E.D. Mich. 2015) (citations omitted, cleaned up).

Hino alleged that Hetman, Boyer, and Boyer's agents "associated together for the common purpose of funneling and awarding bids to certain small to mid-size suppliers in order to obtain a commission on that work," thereby forming an enterprise. ECF No. 1, PageID.13-14. They allegedly engaged in wire fraud, which has three elements: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the

11

scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003).  Hetman allegedly engaged in wire fraud when he repeatedly shared Hino's confidential information with Boyer by email, fraudulently inducing Hino to award bids to Boyer's suppliers.  *See* ECF No. 1, PageID.1, 9-11, 15; *see also United States v. Hussain*, 972 F.3d 1138, 1145 (9th Cir. 2020) (affirming wire fraud conviction based on emails).

Hino contends that Hetman intentionally diverted Hino's funds to his and Boyer's financial gain.  ECF No. 1, PageID.1, 9-11, 15.  Boyer allegedly received payments from its suppliers and distributed the commissions to Hetman and its agents by interstate wire transfer.  *Id.* at PageID.15.[4]  Each use of the wires is a separate crime under § 1343, so Hino has sufficiently alleged that Hetman and Boyer engaged in a pattern of racketeering activity through multiple instances of wire fraud.  *See United States v. Syal*, 963 F.2d 900, 907 (6th Cir. 1992).

Hetman challenges Hino's standing to assert a RICO claim based on the nature of damages alleged.  ECF No. 77, PageID.4879-4880.  Under 18 U.S.C. § 1964(c), only a person "injured in his business or property by

---

[4] Boyer's agents are citizens of Michigan, Canada, and Ohio, while Boyer's suppliers are citizens of different states.  ECF No. 1, PageID.2, 14.

reason of a violation of [RICO]" may bring suit under the statute.  Hetman

contends that Hino has not alleged harm to its business or property.  ECF

No. 77, PageID.4879-4880.  But Hino expressly alleged that it suffered

monetary damages.  ECF No. 1, PageID.16.  It is true that non-economic

and personal injuries are not actionable under RICO.  *Jackson v. Sedgwick*

*Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564-65 (6th Cir. 2013).  But

"[w]hen a commercial enterprise suffers a loss of money it suffers an injury

in both its 'business' and its 'property.'"  *Reiter v. Sonotone Corp.*, 442 U.S.

330, 339 (1979).  Thus, direct financial injury caused by receipt of bribes or

kickbacks, as alleged here, is recoverable under RICO.  *City of Chicago*

*Heights, Ill. v. Lobue*, 914 F. Supp. 279, 282 (N.D. Ill. 1996).

Hetman also disputes causation, arguing that Hino has not alleged or

offered evidence of an injury "by reason of" a RICO violation.  ECF No. 77,

PageID.4879-4880.  "As a general rule, RICO plaintiffs are entitled only to

damages to business or property proximately caused by the predicate

acts."  *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989).  Hino

alleged that it was induced to award bids to Boyer's suppliers because

Hetman disclosed its confidential information, resulting in it paying more to

offset Hetman's and Boyer's commissions.  ECF No. 1, PageID.4-5, 9-11,

15.  The suppliers paid Boyer commissions, and Boyer distributed the

commissions to Hetman and its agents by wire. *Id.* at PageID.15. Hino

has adequately alleged harm caused by Hetman's wire fraud. And despite

the lack of evidence, "[i]f proximate cause is properly alleged in the

complaint, it is admitted upon default." *HTS*, 954 F. Supp. 2d at 948.

A plaintiff who prevails on a RICO claim has a right to treble

damages. 18 U.S.C. § 1964(c). Hino claims that it bore the commissions

suppliers paid Hetman and Boyer and seeks to recover those funds. ECF

No. 75, PageID.4591. Since Hino is entitled to $532,957.85 for Boyer's

commissions and $274,110.75[5] for Hetman's kickbacks under his breach of

contract claim, the trebled damages total $2,421,205.80.

### C.

Hino also seeks to recover attorney's fees and costs. ECF No. 75,

PageID.4591-4596. A plaintiff who proves a RICO violation may recover

"the cost of the suit, including a reasonable attorney's fee." 18 U.S.C.

§ 1964(c). Courts apply the lodestar method to determine the amount of a

reasonable attorney's fee, multiplying the number of hours reasonably

expended on the litigation by a reasonable hourly rate. *Imwalle v. Reliance*

*Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). "[T]he fee applicant

---

[5] Although Hino has shown that Hetman received kickbacks of $296,110.75
between 2015 and 2019, it only seeks to treble the $274,110.75 he
received between 2016 and 2019. *See* ECF No. 75, PageID.4588, 4591.

14

bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Hino's counsel, J. Michael Honeycutt, provided a declaration stating that attorneys and paralegals billed 1,416.9 hours on the case, resulting in $653,409.50 in charges. ECF No. 75-2, PageID.4608. After billing adjustments, Hino has paid $624,701.00. *Id.* Invoices documenting the hours claimed are attached to Honeycutt's declaration. *Id.* at PageID.4611-4867. And a table lists every attorney and paralegal who worked on the case, the year of their bar admission, and their hourly rates. *Id.* at PageID.4869. To avoid "a time-consuming line-by-line analysis of the overall bill," Hino applies a 20% reduction and seeks $499,760.80 in attorney's fees. *Id.* at PageID.4608.

A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The accepted benchmark for determining reasonable hourly rates in this district is the State Bar of Michigan's Economics of Law

Practice Survey.[6] *Mich. Immigrant Rights Center v. Dep't of Homeland Sec.*, No. 16-14192, 2021 WL 855468, at *8 (E.D. Mich. Mar. 8, 2021).

Hetman does not dispute whether the billing rates are reasonable, and the rates are in line with those reported in the survey. Because counsel work at a large, nationally recognized law firm, reference to the top billing rate is appropriate. Attorneys Michael Avila, Brandon Crainer, and R. Bryan Holbrook, with eight to ten years' experience, billed between $430.00 and $470.00 per hour. ECF No. 75-2, PageID.4869. The survey reports that the 95th percentile of attorneys with six to ten years' experience bill $413.00 per hour—slightly below counsel's claimed rates. Attorneys Honeycutt, Brent Cossrow, and Tiffani Greene, with 19 to 24 years' experience, billed between $490.00 and $535.00 per hour. *Id.* The survey reports that the 95th percentile of attorneys with 16 to 25 years' experience bill $546.00 per hour—a rate higher than those claimed. The other attorneys' billing rates are below those reported in the survey. *See id.*

A court must also review a prevailing party's claims about the hours it expended on the relevant matter, and "state with some particularity which

---

[6] State Bar of Michigan, Economics of Law Practice Survey (2020), https://perma.cc/W4SP-Y6YP (last viewed August 2, 2022).

of the claimed hours the court is rejecting, which it is accepting, and why."
*Rembert v. A Plus Home Health Care Agency, Inc.*, 986 F.3d 613, 617 (6th
Cir. 2021) (internal quotation marks omitted).  Courts review billing claims
for "[e]xcessive, redundant, or otherwise unnecessary hours, or hours
spent on unsuccessful claims," which are usually excluded from fee
awards.  *Butcher v. Bryson*, No. 3:12-00251, 2014 WL 4385876, at *3
(M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 437).

Attorneys need not "record in great detail" each minute spent on an
item but must generally identify the subject matter.  *Imwalle*, 515 F.3d at
553 (internal quotation marks omitted).  "The key requirement…is that the
documentation offered in support of the hours charged must be of sufficient
detail and probative value to enable the court to determine with a high
degree of certainty that such hours were actually and reasonably expended
in the prosecution of the litigation."  *Id.* (internal quotation marks omitted).

Hetman does not argue that the hours claimed are unreasonable, and
the billing records are detailed enough to support an award for the work
performed.  The entries concern investigating the factual basis for the case,
conducting discovery, reviewing documents, and preparing and
researching litigation documents.  ECF No. 75-2, PageID.4611-4867.
Although some of the billing entries concern the claims against Boyer and

17

its agents (e.g., reviewing documents to determine Boyer's role), the Court agrees with counsel that these tasks were relevant to the claims that Hetman and Boyer "conspired together to engage in a common scheme to defraud Hino."  ECF No. 75-2, PageID.4607, 4629.  When a plaintiff is entitled to fees on one claim, he may also obtain fees for other claims involving a common core of facts or related legal theories.  *Hensley*, 461 U.S. at 435.  And Hino's 20% reduction in fees adequately compensates for any excessive or unnecessary billing.

Last, Hino seeks to recover $9,856.25 in costs for expert witness fees, including a forensic analysis of Hetman's laptop and a declaration from Laurence D. Lieb.  ECF No. 75-2, PageID.4608.  RICO generally authorizes recovery of "the cost of the suit" but does not reference expert witness fees.  18 U.S.C. § 1964(c).  Without explicit statutory authority awarding specific categories of costs, the general costs statutes under 28 U.S.C. §§ 1821 and 1920 control.  *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019).  Those statutes list six categories of litigation expenses that may be awarded as costs but do not include expert witness fees.  *Id.* (quoting *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 297 (2006)) ("'[C]osts' is a term of art that generally does not include expert fees." (internal quotation marks omitted)); *see also L&W Supply*

18

*Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007) ("[E]xpert witness fees may not be taxed as costs at a court's discretion under Rule 54(d) because § 1920 does not provide for them.").  Hino cites *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, in which the Seventh Circuit held that expert witness fees were recoverable under RICO as part of a reasonable attorney's fee. 63 F.3d 516, 526 (7th Cir. 1995).  But the Court finds this out-of-circuit authority unpersuasive given the Supreme Court's more recent ruling in *Rimini*.  Thus, Hino may not recover its expert witness fees.

Hetman's sole argument about attorney's fees is that Hino has not shown that its business or property was harmed because of a RICO violation.  ECF No. 77, PageID.4881.  For the reasons explained above, this argument lacks merit.  Hino has a right to recover $499,760.80 in attorney's fees.

## IV.   Conclusion

The Court thus **RECOMMENDS** that Hino's request for an award of damages and attorney's fees be **GRANTED IN PART AND DENIED IN PART** (ECF No. 9).  In sum, Hino has a right to recover the following:

- Compensatory damages of $296,110.75 for Hetman's kickback payments between 2015 and 2019;

19

- Compensatory damages of $532,957.85 for Boyer's commissions between 2016 and 2019;

- Treble damages on $807,068.60, resulting in another award of $1,614,137.20; and

- Attorney fees of $499,760.80.

The grand total is $2,942,966.60.[7]

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 4, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are

---

[7] Hino's requested grand total of $2,930,822.85 contains a mathematical error, as it is less than the sum of the line items.  ECF No. 75, PageID.4596-4597.

preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 4, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager